FILED
 2016 May-02 PM 02:49
U.S. DISTRICT COURT
    N.D. OF ALABAMA

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## NORTHEASTERN DIVISION

| | |
|---|---|
| SARAH SUTTON, ) | |
| ) | |
| Plaintiff ) | |
| ) | |
| vs. ) | Case No. 5:14-cv-01697-HGD |
| ) | |
| COMMISSIONER, SOCIAL SECURITY ) | |
| ADMINISTRATION, ) | |
| ) | |
| Defendant ) | |

### **MEMORANDUM OPINION**

Plaintiff, Sarah Sutton, protectively filed a Title II application for a period of disability and disability insurance benefits on September 29, 2010. She also filed a Title XVI application for supplemental security income on October 12, 2010. In both applications, plaintiff alleged disability beginning August 15, 2010. These claims were initially denied on July 26, 2011. Plaintiff requested a hearing before an Administrative Law Judge (ALJ) and a hearing was held before Hon. Gloria W. Green on May 4, 2012. C. Lamar Crocker, an impartial vocational expert, also appeared at the hearing. Plaintiff was represented by counsel. (Tr. 56).

I.   **ALJ Decision**

Disability under the Act is determined under a five-step test. 20 C.F.R. § 404.1520. First, the ALJ must determine whether the claimant is engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). "Substantial work activity" is work that involves doing significant physical or mental activities. 20 C.F.R. § 404.1572(a). "Gainful work activity" is work that is done for pay or profit. 20 C.F.R. § 404.1520(b). Second, the ALJ must determine whether the claimant has a medically determinable impairment or a combination of medical impairments that significantly limits the claimant's ability to perform basic work activities. 20 C.F.R. § 404.1520(a)(4)(ii). Absent such impairment, the claimant may not claim disability. *Id.* Third, the ALJ must determine whether the claimant's impairment meets or medically equals the criteria listed in 20 C.F.R. § 404, Subpart P, Appendix 1. *See* 20 C.F.R. §§ 404.1520(d), 404.1525 and 404.1526. If such criteria are met, the claimant is declared disabled. 20 C.F.R. § 404.1520(a)(4)(iii).

If the claimant does not fulfill the requirements necessary to be declared disabled under the third step, the ALJ may still find disability under the next two steps of the analysis. The ALJ first must determine the claimant's residual functional capacity (RFC), which refers to the claimant's ability to work despite his impairments. 20 C.F.R. § 404.1520(e). In the fourth step, the ALJ determines

whether the claimant has the RFC to perform past relevant work, 20 C.F.R. § 404.1520(a)(4)(iv). If the claimant is determined to be capable of performing past relevant work, then the claimant is deemed not disabled. *Id.* If the ALJ finds that the claimant is unable to perform past relevant work, then the analysis proceeds to the fifth and final step. 20 C.F.R. § 404.1520(a)(4)(v). In the last part of the analysis, the ALJ must determine whether the claimant is able to perform any other work commensurate with his RFC, age, education and work experience. 20 C.F.R. § 404.1520(g). Here, the burden of proof shifts from the claimant to the ALJ to prove the existence in significant numbers of jobs in the national economy that the claimant can do given the RFC, age, education and work experience. 20 C.F.R. §§ 404.1520(g) and 404.1560(c).

Following this five-step procedure, the ALJ found that plaintiff has the following severe impairments: morbid obesity, a hearing loss, a major depressive disorder, and rule out post-traumatic stress disorder. (Tr. 58). The ALJ further found that plaintiff's condition did not meet or medically equal the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(d), 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926. (Tr 59). The ALJ further found, based on the entire record, that plaintiff has the RFC to perform a full range of work at all exertional levels but with the following non-

exertional limitations. She would require work that does not require close cooperation or interaction with co-workers or the general public and work activity that does not demand close supervision. She would also need a quiet environment in which she could hear normal conversations. (Tr. 59).

The ALJ also found that plaintiff is unable to perform any past relevant work. (Tr. 64). Based on plaintiff's age, work experience and RFC, and the testimony of a vocational expert (VE), the ALJ concluded that there are jobs that exist in significant numbers in the national economy that plaintiff can perform, including the representative occupations of photo copy machine operator and collator operator, light unskilled positions, and the unskilled sedentary job of a laminator. All these representative occupations exist in significant numbers in the Alabama and national economy. Therefore, the ALJ concluded that plaintiff has not been under a disability as defined in the Social Security Act. (Tr. 59).

## II.     Plaintiff's Argument for Reversal

Plaintiff asserts that the ALJ erred when she failed to fully consider the impact of plaintiff's obesity on her mental limitations. (Doc. 14, Plaintiff's Brief, at 11-14).

## III.    Standard of Review

Judicial review is limited to whether the record reveals substantial evidence to sustain the ALJ's decision, *see* 42 U.S.C. § 405(g); *Walden v. Schweiker*, 672 F.2d

835, 838 (11th Cir. 1982), and whether the correct legal standards were applied. *See Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988); *Chester v. Brown*, 792 F.2d 129, 131 (11th Cir. 1986). Title 42 U.S.C. § 405(g) mandates that the Commissioner's findings are conclusive if supported by "substantial evidence." *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). The district court may not reconsider the facts, re-evaluate the evidence, or substitute its judgment for that of the Commissioner; instead, it must review the final decision as a whole and determine if the decision is reasonable and supported by substantial evidence. *See id.* (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).

Substantial evidence falls somewhere between a scintilla and a preponderance of evidence; "[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Martin*, 894 F.2d at 1529 (quoting *Bloodsworth*, 703 F.2d at 1239) (other citations omitted). If supported by substantial evidence, the Commissioner's factual findings must be affirmed even if the evidence preponderates against the Commissioner's findings. *See Martin*, 894 F.2d at 1529. While the court acknowledges that judicial review of the ALJ's findings is limited in scope, the court also notes that review "does not yield automatic affirmance." *Lamb*, 847 F.2d at 701.

## IV. ALJ Findings

The ALJ noted in her decision that plaintiff testified at the hearing that she is 5 feet 8 inches tall and weighs 350 pounds. She stated that she has gained 125 pounds due to her depression. She reported that she was unable to work due to her depression. She reported crying spells every other day and indicates she experiences suicidal thoughts once or twice a week. She also reported problems with her ears, poor hearing, and poor concentration. She stated that her last hearing test was in 2010. She lives with her brother. (Tr. 60).

The ALJ found that plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, she further found that plaintiff's statements concerning the intensity, persistence and limiting effects of these symptoms ae not credible to the extent that they are inconsistent with the above RFC assessment. (Tr. 60).

According to the ALJ, plaintiff alleged an inability to work, yet continued to show a significant level of functioning when she completed the Function Report-Adult in November 2010. She showed no problems performing her personal care and indicated she cleaned, did laundry, read books, and played games on the computer. She went outside daily and shopped in stores every month. She was able to pay bills, count change, handle a savings account, and use a checkbook or money orders. She

talked to friends and family daily and showed no limitations with paying attention as long as she could hear. As a result, the ALJ found that plaintiff has continued to show a level of functioning inconsistent with the severity of limitations that she alleges. Furthermore, the medical evidence has not supported the limitations she alleges. (Tr. 60).

With regard to her alleged hearing loss, the ALJ noted that records show that plaintiff has a long history of treatment for ear problems. In December 2002, records from the Barranco Clinic show that plaintiff reported when she was a young girl, she had been told that she had a 70% hearing loss in her left hear. However, since her recent adeno-tonsillectomy, she reported that her hearing had actually improved. An audiogram at that time reflected perfectly normal hearing in her right ear and mild neurosensory loss in her left ear at about a 20-decibel level. The tympanograms were both normal. (Tr. 60).

A consultative physical examination was performed by Dr. S. Bhat, M.D., on May 20, 2011. On examamination, plaintiff was 5 feet 8 inches tall and weighed 250 pounds, with a body mass index of 38. Her hearing was found to be normal in a quiet room, but in a noisy place, she claimed she could not hear. Rhinne's testing was normal in her right ear, but abnormal in the left ear. Weber's testing was centralized.

The assessment noted plaintiff's obesity and hearing loss, but did not show her to be significantly limited by those impairments. (Tr. 61, 392-94).

A post-hearing consultative examination was performed by L.C. Simpson, M.D., on September 6, 2012. On examination, plaintiff was 5 feet 8 inches tall and weighed 300 pounds, with a body mass index of 45.61. Communication was normal and she had normal voice quality. The assessment showed functional hearing loss in the left ear, but the hearing loss in her right ear was "suspicious" and created "credibility issues." (Tr. 577).

A consultative physical examination in February 2010 by Dr. Mark Burns, M.D., failed to support a severity of limitations that would prevent work activity. Plaintiff reported that she was able to hear and understand normal conversational speech without hearing aids. Despite the severity of her alleged limitations, she had not followed up with specialists she had seen for her reported hearing problems.

Plaintiff also alleged an inability to work as the result of depression. Records show that she was treated for depression at Pathways, Inc., in May 2010 after she experienced deaths in her family. She reported that she did not want to be around people and had put on a significant amount of weight. She was diagnosed with a major depressive disorder, single episode, with a GAF score of 50. An additional visit in June 2010 failed to show those limitations were sustained, and the ALJ noted

that continuing treatment for this condition has not been found in the records. (Tr. 62).

In fact, there is no evidence of additional psychological treatment found until February 2012, when plaintiff was admitted to the hospital for safety and stabilization purposes. She reported that she had suffered severe depression since late 2011 and was diagnosed with major depression without psychotic features, and a GAF score of 30. She was started on medication and referred to a mental health center for outpatient treatment. (Tr. 511-12). According to the ALJ, treatment at the mental health center did not show that the severity of plaintiff's symptoms persisted. Later that month, plaintiff reported that she was feeling much better with her medication and a psychiatric evaluation in April 2012 showed a GAF score of 70-75. (Tr. 62; Exs. 18F, 21F).

Plaintiff's psychological limitations were evaluated by Dr. Michael Holt, M.D., at the request of the state agency. This examination occurred on July 11, 2011. Plaintiff reported that she had problems with depression and anxiety since adolescence. She tried to avoid people and be alone as much as possible. She reported occasions of uncontrollable crying and hearing problems. Although she had difficulty providing a clear description of her typical daily activities, plaintiff was able to perform her personal care. She enjoyed eating, watching television and

reading sometimes. On examination, grooming and hygiene were adequate and she had no abnormalities with her speech or language skills. Despite her report of hearing problems, she seemed to have no problem hearing questions or comments by the examiner. The examiner noted that plaintiff was moderately depressed and she was mildly anxious. She also had no significant limitations with fund of information or abstraction, but her thought process was somewhat personalized, disorganized and influenced by her emotional state. There were no specific abnormalities in her thought content, but her judgment seemed mildly impaired by her mood and anxiety issues. Dr. Holt diagnosed plaintiff with anxiety disorder, a depressive disorder, and rule-out PTSD with a GAF of 50. However, the ALJ gave little weight to this part of the opinion because she found it inconsistent with additional opinions of Dr. Holt, which showed only moderate limitations, with moderate restriction of activities and moderate constriction of interest. The ALJ also held that, although Dr. Holt noted a marked impairment in her interpersonal coping skills and her ability to deal with conflict and stress, and indicated she could not function independently at present, this opinion is inconsistent with other opinions he gave. Those opinions showed plaintiff's ability to understand, remember and carry out instructions in the workplace was only mildly to moderately impaired, and that her ability to respond appropriately to co-workers, supervision and work pressures was moderately impaired. (Tr. 63).

The ALJ did give significant weight to the moderate limitations set out in the opinion of Dr. Holt because they are consistent with the treatment plaintiff has received and the level of activities she continues to report. However, Dr. Holt's opinions that suggested more significant limitations were given little weight by the ALJ because evidence does not show sustained limitations. Specifically, the ALJ notes that plaintiff did not seek treatment from June 2011 until February 2012. At the latter date, she was prescribed medications and referred to a mental health center. By April 2012, she showed significant improvement and considerable weight was given to the GAF score of 70-75 assessed in the psychiatric evaluation at the mental health center at that time. (Tr.63).

The ALJ further stated that, although the opinion from Pathways in May 2010 showed serious limitations, little weight was given to that opinion because this was prior to her alleged onset date and evidence did not show she continued to experience the severity of limitations shown when she was admitted to the hospital in February 2012, as plaintiff showed significant improvement with treatment. The April 2012 GAF score showed only transient symptoms, which would not effect significant or sustained functional limitations. (Tr. 63).

The ALJ gave significant weight to the state agency medical consultant that showed plaintiff would have no more than moderate limitations because the ALJ

found this opinion to be consistent with the treatment she has received and consistent with the level of activities she continued to report. The ALJ noted that plaintiff was able to perform her personal care, played games on the computer, went outside daily, talked with family and friends, and shopped in stores. According to the ALJ, plaintiff's continuing activities are inconsistent with a severity of limitation that would prevent all work activity. Based on this, the ALJ concluded that plaintiff would have no more than mild to moderate limitations related to her psychological impairments. (Tr. 63).

It was also noted that the state agncy medical consultant opined that plaintiff had no exertional limitations. The ALJ gave significant weight to this opinion because the evidence did not support significant limitations. The ALJ particularly noted that plaintiff is obese, with a weight of 300 pounds and a body mass index of 45.61, as reported during a September 2012 consultative physical examination. However, the ALJ stated that the record evidence does not state that plaintiff's weight significantly limited her or resulted in impaired functioning. Likewise, the record did not reflect that her weight impacted on her musculoskelatal system or her general health as to cause her treating physician to diagnose her with impairments secondary to or in combination with obesity. The ALJ also noted that, at the hearing, plaintiff did not allege functional limitations due to her weight. (Tr. 62-63).

The ALJ also found that other reports in the record failed to support plaitniff's allegations regarding her hearing problems. The ALJ noted that a consultative physical examination by Dr. Mark Burns, M.D., in February 2010, just prior to plaintiff's alleged onset date, showed that her physical examination was within normal limits. Dr. Burns noted that plaintiff had decreased hearing, but was able to hear and understand normal conversational speech. (Tr. 64; Ex. 1F).

An additional statement from Dr. Michael Holt, Ph.D., in July 2011, showed plaintiff had no difficulty hearing his questions and comments, and he stated her hearing "did not prove to be a barrier." (Tr. 64; Ex. 10F). The ALJ also noted that plaintiff's examination by Dr. L.C. Simpson, M.D., in September 2012 reflected that he could communicate with plaintiff in a conversational voice. (Tr. 64; Ex. 23F at 577).

## V.   Discussion

Plaintiff asserts that the ALJ did not fully consider the impact of her obesity on her mental limitations. SSR 02-1p indicates obesity "may" cause mental limitations, such as a lack of mental clarity from related sleep apnea or a decrease in social functioning. SSR 02-1p recognizes that obesity can cause further degradation of a claimant's physical impairment and instructs the ALJ to assess the effect of a

claimant's obesity on the claimant's ability to perform exertional, postural and social functions. *See* SSR 02-1p, 2002 WL 34686281, at *3.

The ALJ considered plaintiff's obesity by specifically discussing the medical evidence related to plaintiff's obesity when formulating the RFC. (*See* Tr. 63-64). The ALJ stated at step four that she considered "the entire record." (Tr. 59). The ALJ explicitly stated that she considered the plaintiff's medically determinable impairments in determining whether those impairments could be expected to cause her alleged symptoms. (Tr. 59-60). The Eleventh Circuit has held that a statement by the ALJ that she considered the impairments in combination is sufficient to show that the ALJ considered the combined effect of plaintiff's impairments. *See Jones v. Dep't of Health & Human Servs.*, 941 F.2d 1529, 1533 (11th Cir. 1991) (noting that the statement that the claimant does not have "an impairment or combination of impairments listed in, or medically equal to one listed in Appendix 1, Subpart P, Regulation No. 4" indicated that the ALJ considered the combined effect of appellant's impairments); *see also Wilson v. Barnhard*, 284 F.3d 1219, 1224-25 (11th Cir. 2002) (holding that an ALJ's statement that the claimant "did not have an impairment or combination of impairments listed in, or medically equal to one listed in Appendix 1, Subpart P, Regulations No. 4 . . . constitute[d] evidence that [the ALJ] considered the combined effects of [the claimant's] impairments").

The ALJ found plaintiff's severe impairments to include obesity and properly evaluated her obesity in accordance with SSR 02-1p. (Tr. 58, 63-64). The ALJ also considered plaintiff's nonexertional limitations and found that she could only perform work that did not require close cooperation or interactions with co-workers or the general public and work activity that did not require close supervision. (Tr. 59).

In addition, the ALJ gave significant weight to the opinion of Dr. Michael Holt, Ph.D., who considered plaintiff's weight during his examination, and opined that plaintiff's ability to understand, remember, and carry out instructions in the workplace was only mildly to moderately impaired and that plaintiff's ability to respond appropriately to supervision, co-workers and work pressures was moderately impaired. (Tr. 63, 435, 437, 439). The ALJ also gave significant weight to the state agency psychological consultant who considered the evidence, including the opinion of Dr. Holt, in determining that plaintiff retained the ability to understand, remember, and carry out short and simple instructions and to concentrate for two-hour periods on simple tasks with customary breaks. (Tr. 63, 472). Neither of these opinions indicated that plaintiff's obesity imposed mental limitations not included in the RFC, thus supporting the conclusion that the ALJ considered plaintiff's obesity in compliance with SSR 02-1p.

Furthermore, plaintiff did not allege a specific mental impairment that was not already accounted for in her FRC. While plaintiff complains that her weight gain was caused by her depression, this does not show that she had any additional work limitations as a result. In addition, plaintiff did not allege that she was disabled due to obesity. She did not mention obesity as a basis for her disability in her disability reports or at her hearing. She only testified as to her weight at that time and her belief that she had gained the weight as a result of her depression. (Tr. 80-81). Given her failure to allege that she was disabled due to her obesity when she filed her applications or at her hearing, the ALJ was not required to address her weight. *Sanders v. Astrue*, 2011 WL 5118808 (M.D.Ala. Oct. 28, 2011).

Moreover, the Eleventh Circuit and other district courts within this circuit have found that an ALJ did not commit reversible error in circumstances similar to this case. *See, e.g., Castel v. Comm'r of Soc. Sec.*, 355 Fed.Appx. 260 (11th Cir. 2009) (finding no error where the "record reflects that the ALJ considered [the claimant's] obesity[,] . . . the ALJ made specific reference to SSR 02-1p in his ruling[,]" and the medical evidence did not support "specific functional limitations" attributable to obesity); *James v. Barnhart*, 177 Fed.Appx. 875, 877 n.2 (11th Cir. 2006) (*per curiam*) (finding that the ALJ did not err in failing to find obesity to be a severe impairment where, during her own testimony at the administrative hearing, the

plaintiff did not complain that obesity was a functional impairment); *Gary v. Astrue*, 2009 WL 3063318, at *2-*3 (M.D.Ala. Sept. 22, 2009) (failure to mention obesity or explain conclusion as to whether obesity caused any physical or mental limitations did not provide basis for relief where the claimant identified no evidence in the record to support her position that the condition caused "significant limitations on her ability to work"); *Vickers v. Astrue*, 2009 WL 722273, at *14 (N.D.Fla. Mar. 18, 2009) (remand for failure to mention obesity was not required where the claimant did not show how his obesity impacted his ability to work); *Ingram v. As true*, 2008 WL 2943287, at *6 (M.D.Fla. July 30, 2008) (finding that even though the claimant's weight was noted repeatedly throughout the record, the ALJ's failure to mention obesity or address it in accordance with SSR 02-1p did not constitute grounds for reversal where the claimant had not identified any evidence suggesting that his RFC was affected by his obesity); *Broz v. Astrue*, 2008 WL 1995084, at *15 (N.D.Fla. May 5, 2008) ("[B]ecause Plaintiff has not demonstrated that obesity reduced his functional capacity, the ALJ properly declined to consider it as part of his list of Plaintiff's severe impairments.").

Like the cases cited above, here, plaintiff failed to explain how her obesity caused further limitations than those found by the ALJ, and she did not identify any

reliable medical opinions supporting limitations beyond those stated in her RFC resulting from her obesity. Consequently, she is entitled to no relief on this basis.

## VI.   Conclusion

Because the ALJ's decision is supported by substantial evidence, the decision of the Commissioner is due to be AFFIRMED. A separate order will be entered.

DONE and ORDERED this 2nd day of May, 2016.

_____
HARWELL G. DAVIS, III
UNITED STATES MAGISTRATE JUDGE